IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT IUFFUES WEBB II, ) | |
| ) | |
| Plaintiff ) | |
| ) | No. 08 C 6603 |
| v. ) | |
| ) | The Honorable William J. Hibbler |
| ) | |
| BRIAN LANTON, A. ARELLANO, and ) | |
| CITY OF JOLIET, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Robert Iuffues Webb II engages in frequent battles with the City of Joliet and this lawsuit represents yet another salvo in the ongoing war between the two. Prior to filing this lawsuit, Webb sued the City five times, with each suit ending unfavorably for Webb.[1] In this case, Webb alleges that two Joliet Police Officers harbored a grudge against him because of one of his previous suits against the City and pursuant to that grudge beat him up, falsely arrested him, and convinced state's attorneys to prosecute him on trumped up charges. The City and Defendant Officers move to dismiss Webb's claims.

I. Factual Background

The Court takes the following facts from Webb's Complaint, accepting them as true only for the purposes of resolving this motion. In November 2006, Webb was walking in the City of Joliet when an unmarked Joliet police squad car began tailing him. Although Webb attempted to divert his route

---

[1] See Webb v. Joliet, 98 C 4867; Webb v. Joliet, 98 C 4871; Webb v. Joliet, 99 C 4472; Webb v. Ewert et al, 01 C 4193; Webb v. Joliet, 03 C 4436.

1

to avoid any confrontation, the police officers within followed him and eventually activated the car's emergency lights. Officer Brian Lanton and Officer Arthur Arellano exited the vehicle and approached Webb, who asked why they elected to stop him.

Officer Lanton told Webb that the officers were acting on a report that "someone was walking around the neighborhood with a gun in their [sic] pocket" and that Webb fit the description.[2] Webb told Officer Lanton that he did not possess a gun and that, instead, he was a mayoral candidate. Webb also provided Officer Lanton with his place of employment. Officer Lanton, nonetheless, requested that Webb expose the contents of his pockets.

Webb refused to expose the contents of his pockets, and Officer Lanton then "rushed" him, knocking him backward down upon the street and causing his head to strike the pavement. As Officer Lanton tackled Webb, Officer Arellano helped him to wrestle Webb and restrain him with handcuffs. Officers Lanton and Arellano then proceeded to arrest Webb for battery. The Defendant Officers also cited Webb for jaywalking. The Defendant Officers, of course, tell a much different story. For the purposes of resolving this motion, however, the Court must accept Webb's allegations as true.

On May 30, 2007, the Circuit Court of Will County conducted a hearing on Webb's motion to quash his arrest at which both Officer Lanton and Webb testified. The court denied Webb's motion, and set a trial date of September 4, 2007. On the date of trial, however, Officer Lanton called in sick and the Will County state's attorney requested that the proceedings be continued to the next day. On September 5, 2007, Officer Lanton again failed to appear and failed to contact the court to provide a

---

[2] Webb attaches to his Complaint a copy of a police report in which a Joliet man called the police because his 16 year-old nephew pulled a gun on him and then fled. Although Webb alleges that he does not fit the description of the suspect described in the report (for one, he was over 50 years old at the time), Webb does not allege that Officers Lanton and Arellano were aware of the description of the suspect in the report.

reason for his failure to appear. The court gave the state's attorney 15 minutes to locate Officer Lanton, but calls made by the state's attorney to Officer Lanton's cell phone went straight to voice mail. The court denied the state's request for a second continuance and both the jaywalking charge and the battery charge were dropped, *nolle prosequi* with the right to reinstate within 18 months.

Another Will County state's attorney reinstated the battery charge in September 2007. Webb again moved to quash his arrest. On March 12, 2008, the court scheduled a motion to quash Webb's arrest, but Officer Lanton failed to appear for a third time, calling in sick to work. Webb informed the court of Lanton's repeated failure to appear. The court denied the state's attorney's request for a continuance and instead granted a second *nolle prosequi* of the reinstated battery charge.

This suit followed.

## II. Standard of Review

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although a complaint need not provide detailed factual allegations, mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic*, 127 S.Ct. at 1964-1965. A complaint must include enough factual allegations to "raise a right to relief above a speculative level." *Bell Atlantic*, 127 S.Ct. at 1965. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir.2008) (quoting *Equal*

*Employment Opportunity Comm'n v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir.2007)). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Tricontinental Indus., Ltd. v. Price WaterhouseCoopers*, 475 F.3d 824, 833 (7th Cir. 2007).

### III.

The Defendants first argue that collateral estoppel bars Webb from pursuing his claims because the state court determined that the Defendant Officers had probable cause to arrest him. At the outset, the Court notes that whether the Defendant Officers had probable cause to arrest Webb is not relevant to Webb's first claim, that the Defendant Officers used excessive force in arresting him. *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 681 (7th Cir. 2007) (observing that arresting a person on probable cause does not justify beating him up).

Federal courts generally accord preclusive effect to issues decided by state courts because "res judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark fo the federal system." *Allen v. McCurry*, 449 U.S. 90, 95-96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Guenther v. Holmgren*, 738 F.2d 879, 888 (7th Cir. 1984). To determine the collateral estoppel effect of a state court ruling in a later federal court case, a district court employs the state's law regarding collateral estoppel. *Best v. City of Portland*, 554 F.3d 698, 701 (7th Cir. 2009).

The Illinois Supreme Court has enunciated minimum threshold requirements for collateral estoppel to apply; there must be: (1) an issue in the present suit that is identical to one decided in the prior adjudication; (2) a final judgment on the merits in the prior adjudication; and (3) identical parties (or privity between parties) in the two suits. *Gumma v. White*, 216 Ill.2d 23, 38, 833 N.E.2d 834

(2005). In addition, a court may give collateral estoppel effect to a judicial finding only if there was a fair and full hearing in the prior adjudication. *People v. Sutherland*, 223 Ill.2d 187, 208, 860 N.E.2d 178 (2006). For the purpose of applying the collateral estoppel doctrine in Illinois, finality requires that the potential for appellate review has been exhausted. *Ballweg v. City of Springfield*, 114 Ill.2d 107, 113, 499 N.E.2d 1373 (1986).

The Defendants conveniently neglect to discuss all of the threshold requirements for collateral estoppel to apply. They comment, without citation, that collateral estoppel precludes relitigation only if "*among other things*, the issue was actually litigated and decided on the merits and its resolution was necessary to the result in the case." Defs. Mem. at 4 (emphasis added). Later, they note that Webb had an opportunity for a full and fair hearing. Nowhere, however, do the Defendants discuss the threshold requirement of a final judgment, using the phrase "among other things" to wholly ignore those requirements they cannot possibly meet.

Here, there never was a final judgment on the merits. Instead, the state *twice* chose to dismiss the battery charge against Webb because Officer Lanton opted to avoid the state court proceedings.[3] Moreover, during the latter state proceedings, Webb moved a second time to quash his arrest, and the court entertained that motion. Indeed, on the very day that the state court dismissed the battery charge against Webb, it was set to revisit its initial decision regarding Webb's motion to quash his arrest. And

---

[3] In total, Officer Lanton missed three court dates in the criminal proceedings against Webb. It appears that during two of these three absences, court officials could not even reach Officer Lanton via his cell phone. Officer Lanton's repeated and conspicuous absence from the criminal proceedings against Webb certainly could lend weight to Webb's theory that Officer Lanton arrested him for an improper purpose because Officer Lanton may never have had any intention of proving those charges before the state tribunal. In other words, it is reasonable to infer that Officer Lanton arrested Webb for the sole purpose of causing Webb to expend time and resources fighting bogus criminal charges.

5

rightly so, for in Illinois, pretrial rulings on motions to suppress are not final and may be changed or reversed any time before final judgment. *People v. Brooks*, 187 Ill.2d 91, 127, 718 N.E.2d 88 (1999). The state court's decision to entertain Webb's second motion to quash definitively demonstrates that it held open the issue of whether the Defendant Officers had probable cause to arrest Webb. *See Best*, 554 F.3d at 701-02 (observing that "had the prosecutor not voluntarily dismissed, the suppression ruling could have been reexamined by the trial court").

The state court never rendered a final judgment on the merits regarding the underlying battery charge against Webb and its preliminary decision regarding Webb's motion to quash therefore is not entitled to preclusive effect.

The Defendants next argue that the Defendant Officers are entitled to qualified immunity. With regard to Webb's claim that the Defendant Officers falsely arrested him, the Defendants argue that even if Defendants did not have probable cause, it was reasonable for them to believe they had probable cause to arrest Webb. Qualified immunity, they argue, leaves room for such mistaken judgments. Similarly, Defendants contend that the force which they used reasonably was balanced against the severity of crime for which they arrested Webb (battery).

Defendants' arguments are without merit. Defendants ask the Court to view the facts in the light most favorable to them, and not in the light most favorable to Webb. From Defendant Officers' point of view, Webb was evasive and obstructed the Officers' attempts to question him.[4] However, the Court must accept the allegations in the Complaint as true, and evaluate them in the light most

---

[4] In their Reply, Defendants ask the Court to consider the transcript of the hearing on Webb's Motion to Quash the Arrest, where Officer Lanton testified. This requires the Court to evaluate Lanton's credibility, something that would not be appropriate on summary judgment, let alone on a motion to dismiss.

favorable to Webb. In his Complaint, Webb alleges the Defendant Officers did not labor under a mistaken belief regarding what Webb had or had not done. Instead, Webb alleges that they stalked him and later attacked and arrested him, using a report of a 16 year-old with a gun as a cover for their allegedly malicious intent. In other words, Webb alleges that the Defendant Officers knew they had no valid reason to arrest him and yet not only arrested him, but did so violently. *See Morfin v. East City of Chicago*, 349 F.3d 989, 1004-05 (7th Cir. 2003) (noting that where there was factual dispute regarding arrestee's behavior, summary judgment on excessive force claim was not warranted).

Next the Defendants argue that the Court should dismiss Webb's equal protection claim because he failed to allege that he was similarly situated to members of the unprotected class, that he was treated differently than members of the unprotected class, and that defendants acted with discriminatory intent. Webb admits that he did not flesh out the details of his equal protection claim, though much of it the Court can easily infer. In fact, despite the Defendants' argument that Webb fails to allege that he was treated differently than members of an unprotected class or that the defendants acted with discriminatory intent, Webb does include such allegations. In the Preliminary Statement of Webb's Complaint, dubbed by him as Paragraph 1, Webb alleges that the Defendant Officers harassed and arrested him because of his race. In his response, Webb adds further detail to his claim suggesting that the City singles out African American citizens who express their First Amendment Rights and does not similarly harass citizens who are not African Americans. Webb proposes to amend his Complaint to include such allegations.

The Defendants seize upon Webb's admission that he did not plead all the details of his claim and insist that the only remedy for the Court is dismissal, ignoring Webb's request to amend his Complaint. Notice pleading does not require the plaintiff to plead either facts or legal theories.

*Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006). Instead, it requires a short and plain statement of the claim such that relief is plausible on its face. *Limestone Development Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008). Webb has made such a statement, though the Court will grant him leave to amend his Complaint.

Defendants' final argument seeks dismissal of Webb's *Monell* claim against the City, asserting that there are no underlying constitutional claims. Webb's underlying constitutional claims survived the motion to dismiss and therefore so must the *Monell* claim.

The Court is sympathetic to the fact that the City of Joliet has been a frequent target of Webb's inclination to litigate his grievances. A motion to dismiss, however, tests the sufficiency, and not the merits of a plaintiff's claims. Should it be revealed later in this litigation that Webb's claims are frivolous or vexatious, the Court shall consider appropriate remedies. At this time, however, the Court DENIES the Motion to Dismiss in its entirety.

IT IS SO ORDERED.

3/25/09
Dated

Hon. William J. Hibbler
United States District Court