

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT IUFFUES WEBB II,<br>    Plaintiff,<br><br>v.<br><br>BRIAN LANTON, A. ARELLANO, AND CITY<br>    OF JOLIET,<br>    Defendants. | )<br>)<br>)   No. 08 C 6603<br>)<br>)   The Honorable William J. Hibbler<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Robert Webb sued the City of Joliet and two police officers, alleging that when they arrested him in November 2006, they violated numerous of his rights. Webb has frequently sued the City of Joliet; the Court's docket reflecting seven suits filed by Webb against the City in the past eleven years. The officers and the City move for summary judgment on Webb's Complaint.

Before proceeding to the facts, however, the Court must clarify the rules governing summary judgment. At summary judgment, a litigant must put forward evidence that would convince a trier of fact to find in his favor. It is, as the Seventh Circuit has frequently noted, the "put up or shut up" phase of litigation. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2001). At the summary judgment phase, a plaintiff no longer may rest on the allegations of his complaint, but must point to affidavits, depositions, or other evidence of an admissible sort, that a genuine dispute of material fact exists between the parties. Fed. R. Civ. P. 56(e)(2); *Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). A plaintiffs' mere disagreement with asserted facts, without reference to specific supporting material, will not defeat a defendant's argument. *Montano v. City of Chicago*, 535

F.3d 558, 569 (7th Cir. 2008). Based on these rules, the Defendants suggest that Webb has admitted nearly all of the assertions contained in their Rule 56.1(a) Statement of Facts.

In numerous of his responses to Defendants' proposed statements of fact, Webb cites only to his Complaint in support. As noted earlier, reference to a complaint is not ordinarily sufficient to place the fact in dispute. In this case, however, Webb has filed a Verified Complaint, and by "declaring under penalty of perjury that the complaint was true, and by signing it," he converted the factual assertions therein into an affidavit (in so far as they comply with the requirements of Fed. R. Civ. P. 56(e)). *Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996). Such a process is disfavored, because it makes identification of disputes of material fact difficult, as will be evident in the Court's construction of the undisputed facts. *Ford*, 90 F.3d at 246-47.

Thus, to the extent that the assertions in Webb's Verified Complaint are based on his personal knowledge and set forth facts that would be admissible in evidence, the Court must consider those facts. Frequently, however, Webb points to portions of his Verified Complaint that do not call into question Defendants' proffered fact or that are not based on his personal knowledge. In such an instance, Webb's mere disagreement with Defendants' fact is insufficient to create a genuine dispute.

## Factual Background

In November 2006, Lanton and Arellano were traveling in a City of Joliet unmarked police car. (Def. 56.1(a) Statement ¶ 10). Lanton and Arellano had received a call regarding a suspect who might have been armed with a handgun. (Def. 56.1(a) Statement ¶ 11).[1] The officers passed Webb, who was

---

[1] Webb disputes this fact, pointing an exhibit the Defendants attached to their motion to dismiss. But the exhibit, the deposition of Lanton, in fact confirms that the officers were looking for a suspect who might have been armed with a handgun but that they had concluded that Webb did not meet that description. (See Lanton Dep. at 42).

2

walking on the street, and after using the squad car's spotlight to illuminate the area, concluded that Webb did not match the description of the potentially armed suspect. (Def. 56.1(a) Statement ¶ 14).

Ten minutes later, the officers again encountered Webb, who was yelling at passing cars. (Def. 56.1(a) Statement ¶¶ 16; Verified Complaint ¶ 13). Webb yelled at a barking dog in a vehicle, telling it to "shut the fuck up." Def. 56.1(a) Statement ¶ 17). Because Webb continued to confront passing vehicles, the officers made a u-turn to investigate his behavior. (Def. 56.1(a) Statement ¶ 18). Seeing their approach, Webb turned to walk away, crossing a street even though the pedestrian control device displayed a "No Walk" sign. (Def. 56.1(a) Statement ¶ 19-20).[2] Webb proceeded to cross another street while a pedestrian control device displayed a "No Walk" sign. (Def. 56.1(a) Statement ¶¶ 22-23).[3] The officers stopped the vehicle and Lanton approached Webb. (Def. 56.1(a) Statement ¶ 21). Webb asked the officers why they stopped him. (Verified Complaint ¶ 18).

At this point the parties' version of events diverges. According to Webb, the officers told him that they were looking for a suspect who might be armed. (Verified Complaint ¶ 18). According to the officers, Lanton identified himself as a police officer and asked to speak to Webb, who put his hands in his pockets. (Def. 56.1(a) Statement ¶¶ 24-25). It is undisputed, however, that the officers were interested in the contents of Webb's pockets. (Def. 56.1(a) Statement ¶¶ 25-26; Verified Complaint ¶ 21). It is also undisputed that the officers noticed a large object concealed in Webb's right pocket. (Def.

---

[2] Webb disputes Defendants' assertion, pointing to Paragraphs 16-18 of his Verified Complaint. But Paragraphs 16-18 of his Verified Complaint indicate that Webb *did* change direction after the officers began to focus their attention on him, and thus does not dispute the officers' version of events. Further, nothing in Webb's Verified Complaint suggests that the pedestrian control device did not display a "No Walk" signal as he entered the intersection.

[3] Again, Webb disputes Defendants' assertion, pointing only to Paragraphs 16-17 of his Verified Complaint, which contain no information about whether the pedestrian control device displayed a "No Walk" signal as he entered the intersection.

3

56.1(a) Statement ¶ 27).[4] Because Webb refused to reveal the contents of his pocket, Lanton suspected that Webb was attempting to conceal either a weapon or evidence of criminal activity. (Def. 56.1(a) Statement ¶¶ 28,30). The officers contend that Webb struck them in an effort to fend off any search of his pockets, though Webb disputes the claim. (Def. 56.1(a) St. ¶ 31; Verified Complaint ¶¶ 22-25). According to Webb, the officer's rushed him and took him to the ground to frisk him and determine the contents of his pockets. (Verified Complaint ¶¶ 22-24; Def. 56.1(a) Statement ¶ 32).

Webb then informed the officers that they had made a mistake "messing with him" and identified himself as a mayoral candidate for the City of Joliet. (Def. 56.1(a) Statement ¶ 33; Verified Complaint ¶ 20). As the officers restrained Webb, they smelled alcohol and believed that he was intoxicated. (Def. 56.1(a) Statement ¶ 34).[5] When the officers searched him, they found two 12 ounce cans of beer in Webb's front pockets. (Def. 56.1(a) Statement ¶ 35; Verified Complaint ¶ 24)). The officers arrested Webb for battery and disobeying a pedestrian control device. (Def. 56.1(a) Statement ¶ 38).

## Standard of Review

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct., 2548, 91 L.Ed.2d 265 (1986). During

---

[4]Webb disputes the Defendants' assertion, but what Lanton may have noticed is not a fact within Webb's personal knowledge and therefore he cannot rely upon his Verified Complaint to place that fact in dispute.

[5]Webb disputes the Defendants' assertion, but the officers' impression of what they smelled is not a fact within Webb's personal knowledge and therefore he cannot rely upon his Verified Complaint to place that fact in dispute. Further, Webb points to Paragraph 24 of his Verified Complaint, which states only that Lanton conducted a search of Webb, and not what the officers did or did not smell.

the Court's review, it must view all evidence and inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. Fed.R.Civ.P. 56(c). Once the moving party has met the initial burden, the nonmoving party must then "go beyond the pleadings" and "designate specific facts showing that there is a genuine [material] issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The nonmoving party must offer more than a mere scintilla of evidence to survive summary judgment, and conclusory allegations are insufficient to defeat a motion for summary judgment. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir.2005). Rule 56 mandates the entry of summary judgment where a complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2060).

As noted earlier, Webb responds to Defendants' 56.1(a) Statement almost entirely by referencing his Verified Complaint. Further, although Local Rule 56.1(b) allows a non-moving party to point to additional facts that require the denial of summary judgment, Webb has not directed the Court to any such facts.

## Analysis

### A.  *Unreasonable Seizure and False Arrest Claim*

In Count II, Webb alleges that Lanton and Arellano unreasonably searched him and falsely arrested him. Probable cause is an absolute bar to a § 1983 claim for false arrest. *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). A police officer has probable cause to arrest someone if a reasonable person would believe that a crime had been or was being committed based on the facts and circumstances

5

known to the officer at the time. *Id.* The officer need not have evidence sufficient to support a conviction, nor even evidence demonstrating it is more likely than not that the suspect committed a crime. *United States v. Mounts*, 248 F.3d 712, 715 (7th Cir.2001). Moreover, outside of the facts known to the officer, the officer's subjective state of mind is not relevant in determining probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). The Supreme Court has rejected the rule that the offense establishing probable cause must be "closely related" to the offense for which the officer arrested the suspect. *Id.* Rather, the issue is whether a reasonable officer, given the facts known to the arresting officer, would have probable cause to arrest the suspect for *any* offense. *Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007).

The Defendants first argue that they had probable cause to arrest Webb for battery, pointing to their assertion that Webb struck Lanton in the chest as Lanton approached him. As noted earlier, however, Webb disputes the officers' assertion that he struck Lanton, and the Court may not resolve this dispute on summary judgment. The Illinois Vehicle Code requires pedestrians to "obey the instructions of any official traffic control device specifically applicable to him, unless otherwise directed by a police officer." 625 ILCS 5/11-1001. The Code makes it a petty offense to disobey traffic laws. 625 ILCS 5/11-202. Webb does not dispute that he entered the intersection at Fourth Street and Richards Street, nor does he point to any evidence in the record to dispute the officers' statements that when he did so, the pedestrian control devices displayed a "No Walk" signal. Webb's failure to adhere to the Illinois Vehicle Code provided probable cause for the officers to stop and even arrest him. *See Ochana v. Flores*, 347 F.3d 266, 271 (7th Cir. 2003) (with probable cause, officers may lawfully arrest an individual even for minor, non-jailable traffic offenses).

Moreover, the officers had probable cause to arrest Webb for disorderly conduct. Under Illinois law, a person commits disorderly conduct when he acts "in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a). To be disorderly the conduct must be: 1) unreasonable; 2) disturb or alarm another; 3) threaten to provoke a breach of the peace. *Biddle v. Martin*, 992 F.2d 673, 677-78 (7th Cir. 1993). Whether conduct is disorderly depends not only on the conduct itself, but the circumstances surrounding that conduct. *Id.*. Conduct that breaches the peace encompasses a variety of conduct that menaces public order and tranquility. *People v. Allen*, 288 Ill. App. 3d 502, 506, 680 N.E.2d 795 (1997). Both the creation and maintenance of load and raucous noises and boisterous, drunken behavior are indications of conduct that may be disorderly. *People v. Albert*, 243 Ill. App. 3d 23, 26, 611 N.E.2d 567 (1993)(quoting from committee comments to 720 ILCS 5/26-1); *see also Biddle*, 992 F.2d at 677 (prolonged drunken tirade amounted to disorderly conduct).

In this case, Webb does not dispute that he yelled profanity at passing vehicles. Further, he made confrontational gestures towards those vehicles. He did so at 9:00 p.m., when citizens in the neighborhood could reasonably expect peace and quiet. Not only did Webb yell at and harass passing vehicles, but he obstructed the free flow of traffic by disobeying traffic signals. When the officers approached Webb to discuss his raucous and unruly behavior, Webb refused to answer their questions. After searching Webb, the officers smelled alcohol on Webb's breath. In short, the officers were faced a person who smelled of alcohol, who had additional alcohol in his pockets, who disobeyed traffic signals as he walked along the street, and who shouted at and otherwise confronted passing vehicles. Given these facts, a reasonable officer would have reason to believe that Webb's boisterous, confrontational behavior and apparent intoxication amounted to disorderly conduct.

Because the officers had probable cause to arrest Webb both for violating the Illinois Vehicle Code and for disorderly conduct, Webb's claim for an unreasonable stop and unlawful arrest fails. The Court GRANTS Defendants' Motion for Summary Judgment on Count II of Webb's Complaint.

B.   *Excessive Force Claim*

In Count I, Webb alleges that the Defendants used excessive force in effectuating his arrest. Webb alleges that the Defendants tackled him, causing injury to his head and upper body. Webb admits, however, that his injuries were not so severe as to require immediate medical attention. (Def. 56.1(a) Statement ¶ 37). As noted above, the officers did have probable cause to arrest Webb, and so the use of some force was appropriate. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Whether an officer used excessive force in effectuating an arrest turns upon whether the use of force was reasonable from the perspective of a reasonable officer without the benefit of 20/20 hindsight. *Id.* at 395. Not every push or shove, even if later it seems unnecessary, violates the Fourth Amendment. *Id.*

In this case, the officers were faced with a suspect who had been shouting obscenities at passing vehicles. When the officers attempted to interview Webb, he refused to cooperate with their inquiry and further refused to reveal the contents of his pockets. Given that the officers were in a high crime area,[6] at 9:00 p.m., confronted with an evasive suspect who would not reveal the large object in his pocket, it was not unreasonable for the officers to be concerned with their safety and to use sufficient force to ensure that Webb did not remove anything from his pocket prior to the officers effectuating his arrest. *See Jewett v. Anders*, 521 F.3d 818, 826 (7th Cir. 2008) (holding that officers did not use excessive force in pushing

---

[6] The officers point to their affidavits and the affidavit of their commanding officer in support. (Def. 56.1(a) Statement ¶ 36). Webb denies that the area was a high crime area, but points to nothing in support.

8

to the ground suspect whom they reasonably believed to be armed); *United States v. Tilmon*, 19 F.3d 1221, 1227-28 (7th Cir. 1994) (noting that safest way for police to deal with a potentially armed suspect is to make the suspect lie prone on the ground).

The Court GRANTS the Defendants' Motion for Summary Judgment on Count I of Webb's Complaint.

C. *Counts III*

In Count III Webb alleges that the officers arrested him in retaliation for his exercise of his First Amendment right. Defendants argue that because the officers had probable cause to arrest Webb, his First Amendment retaliation claim fails, citing *Hartman v. Moore*, 547 U.S. 250, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006). But *Hartman* held that a plaintiff must plead and prove the absence of probable cause in a *malicious prosecution* claim, not in a false arrest claim. *Id.* Generally, a plaintiff pursuing a First Amendment retaliation claim does not need to prove *but-for* causation, but rather only that the protected speech was a motivating factor in his injury. *Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004). The Seventh Circuit has not addressed the impact of *Hartman* upon retaliatory arrest claims, but courts in the Circuit have generally found that *Hartman* does require a plaintiff to plead and prove the absence of probable cause in a retaliatory arrest claim. *See Thayer v. Chiczewski*, 07 C 1290, 2010 WL 1336537, at * 7 (N.D. Ill. Mar. 7 2010) (collecting cases, but deciding the case on other grounds).

Like the court in *Thayer*, this Court need not decide whether the existence of probable cause operates as a bar to a First Amendment retaliatory arrest claim. In order to establish a *prima facie* case of First Amendment retaliation, a plaintiff must demonstrate that he engaged in constitutionally protected speech and that his speech was a motivating factor in the defendant's retaliatory act. *Morfin v. City of East Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003). If the plaintiff meets the burden, a defendant can

defeat the claim by demonstrating that he would have taken the same action absent the protected speech. *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 670 (7th Cir. 2009). If the defendant makes such a showing, the plaintiff can stave off summary judgment by demonstrating that the defendant's preferred reasons are pretextual. Id.

In Defendants' 56.1(a) Statement of Facts, they state that Lanton did not "take plaintiff down and arrest him pursuant to any conspiracy, malice, racial animus, or abuse of process," but because Webb refused to reveal the contents of his pockets. (Def. 56.1(a) Statement ¶ 59). Webb admits that Lanton "did not use excessive force against him" for any of the reasons stated in Defendants' proffered fact and further admits that the reason for Lanton's actions was that Webb "challeng[ed] his inquiry" into the contents of his pockets. (Pl. Resp. to Def. 56.1(a) Statement ¶ 59). Webb makes neither an admission nor a denial of Paragraph 59's statement that his refusal to reveal the contents of his pockets also motivated his arrest, and the Court therefore deems Webb to have admitted that fact. Local Rule 56.1(b)(3)(C); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). In so far as Webb admits that the Defendants were motivated not by a desire to retaliate against him for exercising his First Amendment rights, but to determine what he concealed in his pocket, Webb's admission dooms his claim.

Webb makes an oblique reference that he asked President Barack Obama a question at a City of Joliet Town Hall meeting about police corruption in Joliet. Even if the Court were to find that this reference trumps Webb's admission regarding the reason for his arrest, he points to no evidence that the officers knew of his protected speech and thus cannot demonstrate that it served as a motivating factor in his arrest.

10

The Court GRANTS Defendants' Motion for Summary Judgment on Count III of Webb's Complaint.

D. Count IV

Count IV alleges the officers arrested Webb in violation of his right to the Equal Protection of the laws. Webb's admission to Paragraph 59 defeats this claim as well.[7] Webb admitted that Lanton did not have any racial animus in arresting him. Even if Webb's admission to Paragraphs 42, 43 and 59 did not defeat this claim, Webb's claim would still fail. In order to establish an Equal Protection claim, Webb must demonstrate that he is a member of a protected class and that the officers treated him differently than they treated members outside of the protected class. *Chavez v. Illinois State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001). Webb points to no evidence that the officers treated other similarly situated persons outside the protected class more favorably. Nor does he point to any evidence that the officers harbored any discriminatory intent. The allegations in his Verified Complaint all are based on Webb's assertion that the officers did have a discriminatory intent, but Webb has no personal knowledge of the officers' subjective state of mind and cannot rest on his mere allegation on summary judgment.

The Court GRANTS the Defendants' Motion for Summary Judgment on Count IV of Webb's Complaint.

E. Count V-VII

Webb offers no evidence in support of Counts V-VII of his Complaint. Count V alleges that the officers abused the criminal process. Count VI alleges that the officers, together with the Assistant State's Attorneys, conspired to intimidate and harass him in violation of his Fourteenth Amendment Rights.

---

[7] Further, in Paragraphs 42-43 Defendants assert that they did not act with any discriminatory intent. In response to these Paragraphs, Webb fails to point the Court to any evidence in the record, and so the Court deems Webb to have admitted those facts as well.

11

Count VII alleges that the officers, together with the Assistant State's Attorneys conspired to maliciously prosecute him.

To support a claim for the tort of the abuse of process, Webb must point to some evidence that demonstrates that the officers had an ulterior motive in undertaking the search and arrest of Webb. To support a claim that the officers conspired to violate his civil rights, he must point to evidence to demonstrate an actual conspiracy between the officers. Similarly, to support a claim that the officers conspired with the assistant state's attorneys to maliciously prosecute him, he must point to evidence to demonstrate an actual conspiracy between the officers.

In support of these claims, Webb, however, points only to his Verified Complaint, which purports to state the subjective state of mind of the two officers and to facts described in another civil case that Webb brought in this district. *See Webb v. City of Joliet et al*, No. 03 C 4436. As noted several times, Webb cannot rely on his Complaint for matters outside the scope of his personal knowledge. He cannot merely assert that the officers engaged in a conspiracy and contend that his assertion constitutes evidence. He must attest to some specific fact that points to a conspiracy to abuse the criminal process, which he has not done. As for his prior complaint against the City of Joliet, the facts of that case do not serve him either. In that case, judgment was entered in favor of the defendants, no conspiracy was found, and Lanton and Arellano were not even parties to the case. The facts stated in his complaint in that case cannot possibly establish that Lanton and Arellano conspired to abuse the criminal process, violate his civil rights, or maliciously prosecute him. In fact, Webb's admission to Paragraph 59 seems to doom these claims as well.

The Court GRANTS Defendants' Motion for Summary Judgment on Counts V-VII of Webb's Complaint.

F.  *Count VIII*

In Count VIII, Webb claims to have suffered severe emotional distress inflicted by the Defendants. The tort of intentional infliction of emotional distress requires among other things that the plaintiff demonstrate that the defendant's conduct was extreme and outrageous and that he actually suffered severe or extreme emotional distress. *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1030 (7th Cir. 2006). Given that the Court has found that the Defendants had probable cause to arrest Webb and that they did not use excessive force, Webb cannot show that the Defendants conduct was extreme or outrageous. Further, Webb admits that he did not seek medical attention for his physical injuries resulting from his arrest and he also admits that he did not seek any sort of psychiatric treatment for his emotional injuries. Webb has pointed the Court to no evidence to support a claim that he has suffered severe emotional distress.

The Court GRANTS Defendants Motion for Summary Judgment on Count VIII of Webb's Complaint.

G.  *Count IX*

Count IX is a *Monell* claim brought against the City of Joliet. Because the Court has granted summary judgment on all of the underlying claims against the individual officers, the Court GRANTS Joliet's Motion for Summary Judgment on Count IX of Webb's Complaint.

II.  *Webb's Arguments*

Webb's arguments are largely based on misconception of the law. To a large extent, Webb relies on his Verified Complaint. Yet, much of that Complaint refers to matter outside the scope of Webb's personal knowledge — such as whether Lanton feared that Webb had a gun in his pocket or whether the officers harbored a discriminatory motive, or whether the officers conspired to deprive him of his civil

13

rights. Webb has no personal knowledge of the subjective state of the officers mind and cannot rely on a mere assertion to prove these facts even by converting his Complaint into an affidavit.

Webb also seems to argue that there are disputed facts that prevent the entry of summary judgment against him. For example, Webb disputes the officers' testimony about their direction of travel. That fact may genuinely be in dispute, but it simply is not a *material* fact. The direction the officers traveled has no bearing on whether they had probable cause to arrest him for crossing a street when the pedestrian control device displayed a "No Walk" sign. Webb also seems to argue that the fact that the officers failed to attend criminal proceedings in Will County demonstrates that they lacked probable cause to arrest him. It does not, for the existence of probable cause turns upon facts known to the officers at the time.

In short, Webb attempts to defeat the Defendants' Motion for Summary Judgment with flimsy allegations regarding the officers' state of mind. He points to no deposition testimony or documentary evidence. He relies extensively on facts from a case in which judgment was entered against him. And he admits to facts that doom his claims.

For all of the foregoing reasons, the Court GRANTS the Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.

_5/18/10_
Dated

_Wm. J. Hibbler_
Hon. William J. Hibbler
United States District Court

14